Good morning, Your Honor. John Ward appearing for Mr. Murphy. I'd like to save a couple of minutes. Could you speak up a bit? Yes. John Ward appearing for Mr. Murphy. I'd like to save a couple of minutes for rebuttal, if I could. Unless the Court wants to go elsewhere, I'd like to just spend a few minutes talking about why there was insufficient evidence before the sentencing court in this case that the prior conviction in 1997 was for residential burglary. What was before the court in 1994, I'm sorry, the 2004 court was that Mr. Murphy pleaded guilty to burglary. In addition, he changed his plea. I'm sorry, he pleaded not guilty to burglary and then later changed his plea. At the time of the change of plea, after he was given his advisements, the trial judge said, over the people's objection, the court finds that the jury possibly finding the defendant guilty of 496 Penal Code as it is a non-strike prior constitutes an unusual circumstance and finds that probationary sentencing is appropriate. So the question is, as the Court is aware, the California Court of Appeal fixed the problem by saying, well, what the judge must have had in mind was California Penal Code section 462, which precludes a grant of probation except in unusual circumstances, which must be stated on the record. My problem with that is we don't know what the people's objection was. And that being the case, it seems to me that it's a plausible surmise that the judge had in mind 462. Of course, this is all a little bit surreal because we later found out what the real story was, but we're limited here to... So given that... Excuse me. What do you say about the transcript? It's just, I mean, these things happen, but that was not before the sentencing judge. And under the sufficiency of the evidence rules, the prosecution gets one bite at the apple, not two. I think. What about the fact that the motion to strike the prior seems, the Petitioner's made quite clearly that it was a Verhoeven one. Is the problem the sequence, that that wasn't considered until after the judge ruled? Yes. That there was a finding. In other words, there was a finding. Are you talking about in the current case, in the current sentencing case? Right. In the current sentencing case, the motion, in the current, no, in the original case... Yes. It is very confusing. It is very confusing. No, in the current case. In the current case, there was a motion to dismiss prior convictions. A Romero motion. Right? And it says in it, the nature of Murphy's priors are as follows. 10-695, convicted. And then 10-7897, conviction of first-degree residential burglary. Right. Excuse me, Judge Brizoma, but what else could he say? The judge had already found. That's what I'm trying to find out. The judge had already found by then? Yes. Yes. Yes. Because the Romero motion wouldn't have come up unless there had been a finding that this was a strike, and therefore the sentence was doubled in the five-year 666. What do you understand alleged to mean? Does that mean that they were pleaded, or that he's not conceiving that they occurred? You mean in the Romero motion? Yes. I don't really, honestly, I don't think it really makes any difference, but alleged, it was alleged, but however, the judge had already made this finding. The judge in the case that's before us had decided. What happened in that case was, waived a jury trial, submitted. The judge said, I find it was a strike. That's the only record that we have in the current case. So we look to the basis for where he got that. And then what we have is this series of documents. Did the judge take Romero motions after the judge determines? Yes. Yes. Because otherwise, you know. All right. So this is a question. Where is this all going to get you? You're going to go back and see. I think you don't go back. That's what I think. Well, first of all, why would we decide that? Pardon me? Why would we decide that? Because of Blanton, and because of Apprendi, and because. But why would we decide that, as opposed to just saying, you know, we grant the habeas and the state court does what it does? Well, and then in that case, I guess. And we know what it's going to do. And we know what the rule is in California, which is that there's no double jeopardy problem with regard to sentencing. Well, he'd make a motion to dismiss on double jeopardy grounds, I suppose, when they went back. And then he'd move. And then we'd come back and do the whole thing all over again. But Burke says, you know, that you get one bite at the apple. So I think he would succeed. I mean, he might have to come back here. So in the interest of sort of practicality and economy, we might as well just do the whole thing. If you were to agree with me, you might as well just do the whole thing at once. Well, is that ever done? I mean, does one court ever decide whether the next action would be double jeopardy? Well, yes, in cases of insufficient evidence, it bars retrial. Well, it just does. But you don't put that in an order. It's if you went and tried to do it again that you would say this is barred because it's double jeopardy. I mean, I really hadn't thought of that, honestly. And you may be right. I mean, I would be very happy if the court were to rule that, in my favor, that there was insufficient evidence to sustain the finding that the burglary was a residential burglary. Is there any realistic chance that it's not going to simply be resentenced again? Pardon me? Is there any realistic chance that he's not simply going to be resentenced again? Well, yeah, because the double jeopardy clause prevents it. I don't understand the appending argument because of Almondaris-Torres. No, no, no, no, no. See, that's where I really strongly disagree, Your Honor. Because this is not simply a recidivism case. This is a case where an additional fact was required, the fact that it was a residential burglary. I mean, you know, it could have been a burglary of a trailer. It could have been a burglary of a courthouse. It could have been a burglary of any number of things. And it would not have, it wouldn't be a strike. And so it's a, this is an additional, this is classically an additional fact that triggered an additional sentence. If it was just simply a recidivism, that's what I, I was, you know, I've been sort of dumb in this case, and the commissioner had to find Blanton for me. I mean, you know, because I, I was beguiled by Monje. But when I actually thought it through, you know, it, it dawned on me that this is an additional fact that increases the sentence. And that therefore, excuse me, and that therefore the Sixth Amendment does apply. And this record simply just doesn't cut the mustard. Yeah, I mean, it's a, you know, I mean, if it were, if this. The only question is what was he convicted of? Because if he was convicted of residential burglary. Right. So it's not, it's not a question of whether he did a residential burglary. It's a question of what was the conviction. What was the conviction. And what they proved the conviction was back in that, that court that gave him probation back in 2004, I think it was. And if they didn't prove it up then, that was, that's what they got. And that's what they got to live with. They had this transcript for some, for some reason, unbeknownst to me, they didn't ferret it out until much later in the day. And I'm saying that's just too late. Thank you. Thank you, Counsel. May it please the Court. Deputy Attorney General Lance Winters for the respondents. The California Court of Appeals decision that there was sufficient evidence of the prior conviction in this case was not an unreasonable determination of the facts or an unreasonable application of federal law. As opposing counsel pointed out, the trial court's reference to this in the sentencing being a non, being an unusual case and therefore the trial court was granting probation, indicated that it was a first degree residential burglary. The only reason for the trial court to invoke such language of unusual case and to give reasons for granting probation was because those were required by section. But he just likes to give reasons. It's possible, but unlikely. I mean, it seems that it fits perfectly with the 462 requirements. And it wouldn't be required at all if it was a non-residential burglary. It wouldn't be required, but he might just like to give reasons for what he does. Well, the fact that there might be countervailing inferences that could be drawn I don't think is dispositive of whether there was sufficient. How could you say beyond a reasonable doubt that that's why he did it? Pardon me? How could you say beyond a reasonable doubt? I think the standard we're applying, because that's what California applies, right? Well, that's what the California courts apply, yes. Right. And beyond a reasonable doubt, we know that when somebody says something that he could either be saying because he felt like it or because he had to, that he must have done it because he had to? Well, I think that the California Court of Appeal could find that that was substantial evidence to support the finding, in addition to the evidence of the booking form in this case, which said that it was for — it said Petitioner had been booked for a 459 PC1 burglary, which indicates that it was burglary of first degree. Now, opposing counsel has said that one — It doesn't mean that that's what he pled to. No. No, it doesn't. But it's further evidence that that's what he was charged with. And we're not — we're not — when we're talking about degrees here, we're not talking about mental state, something that later has to be proven to a jury. This is a fairly discernible fact, whether it's residential or it's not. I mean, that's something police officers can usually determine. This is not a hotly contested element of the offense, usually. So the fact that he was booked for first degree burglary, he was then charged with burglary. You know, you can be booked for something, and you can make a compromise. You can pledge to something less. Absolutely. Absolutely. Do we know whether he pledged to something less or not? No. But I'm just saying that that's further evidence upon which the California Court of Appeal could rely. I don't recall, in response to Judge Berzon's question about whether the timing of the motion in this case, I do know that sometimes Romero motions to strike are made before the truth findings or before the prior convictions are found true, or they're made at the same time. I think what happened here, from what I could tell, was that the motion was submitted and that they were both dealt with at the same hearing, but the trial court first made his finding and then said, well, now I've made the findings, so I'm going to consider the motion. Yes. So under those circumstances, it seems to me you never argued that the motion was relevant. You never argued that. No. No. And it seems to me that, you know, if for efficiency things were done that way, but still, if the decision was made before the motion was considered, I would think the motion sort of isn't submitted, even though the paper was there. It would be odd to rely on it. Right. I think that's right. At that point. As far as the question of a possible retrial, I do think that is really a premature question in this case. I mean, the trial, you know, we're in a situation where we don't really know what's going to happen on remand. Yes, they very well could retry this prior conviction allegation and sentence him for the same thing. But they very well could not. I mean, we're in a situation in California where we're faced with releasing lots of prisoners. They may strike a bargain of some other sort rather than retry this prior conviction allocation. We don't really know what would happen. And so I think a ruling by this Court as to whether double jeopardy applied or not would be inappropriate at this time. Furthermore, I don't think — So in that case, if we were to grant an additional writ, how would it read? What's the writ then? That the finding of the truth of the prior conviction allocation is reversed. And that further proceedings are — and it's remanded to the State court for further proceedings to occur within, you know, 90 days. Because at the very least, even if the State court doesn't retry, we'd have to resentence. It usually says it's granted unless the State court does X within 90 days. It would say unless they decide to retry him in the normal habeas writ. Right. And we couldn't say that if it were double jeopardy. Right. But I don't think you would have to say they could retry it because they could choose to resentence without that right. Well, let's just say resentencing. But could we say, unless they proceed to resentencing, if it were double jeopardy? Well, I don't think you need to. Well, that's why I did first and asked what we would say in the writ. Right. Because as I said, normally in the writ we'd say you must discharge the writ or grant — we'd grant the writ and say the State shall dismiss the — or whatever, unless they decide to retry the person. Here it would be unless they decide to resentence the person. But if it were double jeopardy, we couldn't say unless they decide to resentence him, could we? Well, if double jeopardy applied, it would have to be resentencing. But we wouldn't say to the State, you know, unless you resentence him, if that were not an available option. Well, if you found the prior conviction — the evidence of the prior conviction insufficient and a double jeopardy was barred by retrial, they would still have to resentence him because the sentence would now be modified. So either way, there's going to be a resentencing. So you still think we'd still say resentencing? Right. Right. Exactly. Furthermore, I don't think — even if you were to reach the question, I don't think Apprendi did not change much in this respect. If anything, Apprendi, as pointed out by the court in Blanton, Apprendi rejected a dichotomy between sentencing facts and elemental facts. So in Blanton, when the government said we should be able to retry this because it's a sentencing fact, this court said, no, no, that's not a distinction that makes a difference under Apprendi anymore. But Apprendi still retained the prior conviction exception. In fact, Apprendi expressly distinguished Munge on the basis that it was a recidivism case at page 488 in footnote 14. And the Supreme Court has subsequently characterized — post-Apprendi characterized Munge as saying double jeopardy does not preclude retrial on a prior conviction used to support recidivist enhancement. Now, opposing counsel tries to argue that this goes beyond the fact of a prior conviction, but Apprendi itself said — didn't talk about the, quote, bare fact of a conviction. It said any fact of conviction on page 488. In fact, the facts that were found to be insufficient in Munge were even more distant from the conviction than in this case. In Munge, the prior conviction was for an assault, which only qualified as a serious felony if it involved the infliction of great bodily injury or personal use of a deadly weapon, neither of which were elements of the offense. Well, that's a different problem. That's a Taylor problem and may, in fact, have Apprendi consequences. But here, if we knew what he was convicted of, you don't have to fill in anything else, right? Right. I think what he is convicted of is included within the fact of conviction. So I think clearly the prior conviction exception of Munge and retained by Apprendi is still in force and would clearly apply to a case such as this where we're talking about what the petitioner was convicted of. Unless the Court has any other questions. Thank you. I'll submit. You have a minute. I mean, I just want to say really briefly that the issue of whether or not a burglary was residential was a very, very hot issue in the California courts because there was a time when it didn't really make any difference. And then I can't remember, it was somewhere back in the 90s, residential first-degree burglaries became strike priors, et cetera, et cetera, et cetera. And so, you know, Guerrero and there were all these cases about how far you can look. But I still don't see why there would possibly be an Apprendi problem because we're not – once you know what the conviction was for. It was for burglary. That's what we know. Well, that's a different question. But if we knew what it was for. If you knew what it was for. In other words, if – yeah, if we knew what it was for. Yeah. Then it would be covered by Almendarez-Torres, right? If we knew that it was a residential burglary. Right. So if – But we don't, I think. Well, if we don't, then we don't. Then he should get reversed and have a new hearing. But it's – I mean, I guess why – the reason why this is an oddity is because – and I don't know what you do with it – is because California, despite the fact that it doesn't have to under Apprendi, does treat this as a fact subject to jury trial and beyond a reasonable doubt. True. True. However – and that was why Manji said, you know, we really don't want to give them a disincentive about that, blah, blah, blah. Later, Apprendi says, wait a second, it's the Sixth Amendment. It's not by grace of California legislature. But it is by grace. The question of whether this was for residential burglary is by grace because under Federal Apprendi law, you do not have to try that to a jury or beyond a reasonable doubt. Excuse me. In that case, I disagree, Your Honor, because it is a fact. It is a fact. The fact that it was a residential burglary is what triggers the enhanced thing, not the fact that it was a burglary. That's always true of crimes. There is something about some offenses do and some offenses don't. It's just a question of proving what was the offense. Yeah. And the offense has to be residential burglary. It had to be a house that couldn't have been abandoned. But that's the offense. It's not something additional to the offense. But it's a fact used to – I mean, we're going to go in circles, but you'll decide the case. But, you know, whether or not it was a residence is a fact that a jury would have had to figure out. It's a question of what he was convicted of. Was he convicted of a residential burglary? Yes. That's the only fact there is. You're not talking about what he did. You're talking about what he was convicted of. But what he was convicted of depends upon a key fact, whether or not this was a residential burglary. And if it had been found that it wasn't, then he wouldn't have had his sentence doubled. So any fact that the Court relies on to increase the sentence has to be, under the Sixth Amendment, has to be proved beyond a reasonable doubt. Do you think the fact that there's a plea agreement makes any difference in this case? What did he say? What did the defendant say in the plea agreement? He didn't say anything. I understood he did. I'll look at that record again. Well, no, I mean, because it was over objection. My recollection is that he did say that he recognized this was a residential burglary and it was a strike against him. Yes, but that's the material that the Attorney General wanted to bring in to after. That was not before the sentencing judge. The plea agreement was not before. All they put before the sentencing judge was the court minutes, which says, I pleaded to burglary. The judge said, I grant you probation. Basta. All right, thank you. In case this argument will be submitted, the next case for argument is Dent v. Knowles. Counsel. May it please the Court. Vivian Hu for Petitioner Appellant. Brian Dent. I would like to reserve two minutes for rebuttal. Mr. Dent is serving a sentence of 60 years to life after conviction by jury for two This is an equitable tolling case. One month after filing, the district court in this case dismissed Mr. Dent's federal habeas petition, which was filed pro se as untimely on preliminary review without requiring responsive briefing and without holding an adventure hearing. Despite Mr. Dent's request for equitable tolling due to multiple mental illnesses, developmental disabilities, and his inclusion of medical records supporting his claims. His claims of mental impairment due to both mental illness and developmental disability are uncontested, and pursuant to laws v. Lamarck, Porter v. Olison, and Bills v. Clark, he is entitled at a minimum to further development of the record in district court. The district court in this case incorrectly concluded that he was not entitled to equitable tolling because there was no state petition pending during the relevant period, and the district court also erred in concluding that he was not entitled to equitable tolling for his claim that he required the assistance of another inmate to file his first state habeas petition, and the reason was because the limitations period had already expired by that time. Neither of these factors is relevant to an equitable tolling determination. The district court cited to Thorsen v. Palmer and Nino v. Galazzo, which are statutory tolling cases, but tellingly never cited to laws v. Lamarck, which controls the outcome of this case, and pursuant to which he has made a colorable claim of entitlement to equitable tolling, which mandates further factual development. The district court also never addressed and never discussed his developmental disabilities and how they might have interfered with his ability to timely file. He has a documented IQ of 56. He's been characterized by psychologists as in the, quote, mentally retarded range of intellectual ability. He's unable to count backward from 20, and this court has previously found that such disabilities can form the basis for equitable tolling. In Bills v. Clark, this court focused on that petitioner's inability to read and write, his neurological deficits, borderline to retarded level of intelligence, and we mandate for an evidentiary hearing on how such mental impairments might have interfered. The government in this case, assuming that you're right about the first three years, the government then went into this very elaborate counting exercise with regard to everything that happened thereafter, and frankly I couldn't tell whether they were right or wrong about that, but my question to you is, should we be doing that, or should we be asking the district court to do it, or what? Well, the district court, I believe, is in the best position to do that. Given that, I think this case should be remanded based on equitable tolling, but... Equitable tolling, but you have to, do you have to have some equitable tolling for the period after 2003? No. Not just statutory tolling? No. If all the time that his state court, he went through three rounds of post-conviction review, and assuming that all the time that his petitions were pending is statutorily tolled, that's about, that's close to five years. It's about four years and ten and a half months. And that's assuming that he's entitled to the gap tolling, the interval between the... Okay, but that's what the disputes, at least that's what the government disputed. Right. I mean, they basically said that some of those periods were just too long under our standards, and I gather at some points he said what the reason was, and I don't know if he said it all the time. Right. Well, throughout all of his state court petitions, he explains that he's mentally, he has mental issues, he's got mental illnesses, he attaches medical records. He even, I think for the first, the first gap was maybe four and a half months. He also, in addition, says that he didn't receive a denial of the lower court, the lower court order for four months after it was filed, and he attaches letters that his in-house, his jailhouse lawyer filed on his behalf, and that he asked the librarian, the prison librarian to call the court, and so he attaches all of those things. With respect to the, there's another interval, I think nine and a half months, between the filing, the denial by the Court of Appeal and the filing in the California Supreme Court. He also says that he relies on fellow inmates to file these things for him because he doesn't, because of his disabilities and his mental illness, and he said that Lemerle Johnson, who is the person who was doing these writs for him, was separated from him because Mr. Dent was transferred to another prison, and that accounts for, you know, a great deal of time of those nine and a half months. So I think that he does, he does provide adequate justification, and this Court actually, I think it was Maxwell v. Rowe, found that a period of 14-month, a 14-month interval between filings was reasonable because the Petitioner had justified, justified his delay based on, I think in that case it was the complexity of the record. And so his, Mr. Dent's lengthiest interval is about 14 months, so it's not unprecedented in this Court. The District Court did not have before it all of the State court exhaustion papers. It didn't have any papers before it. It had no papers before it. No State court filings at all. And that was because the Petitioner didn't provide them? That was because it was, the District Court dismissed under Rule 4 and didn't require the Respondent to lodge any of the State court filings. And the District Court just merely looked at the website, the California appellate website, to figure out when Mr. Dent had filed certain petitions. And it appears that he was only aware of Mr. Dent's first round of Federal, I mean, sorry, first round of post-conviction review, because he doesn't mention the second or the third rounds. And Mr. Dent went through three rounds. And ordinarily that comes in from the Respondent? Yes, it does. Because it's affirmative defense, that's why? Well, and because the Respondent is in the best position to, I mean, because the Respondent is in the best position to provide those kinds of papers, because Mr. Dent is acting pro se in District Court. And for the same reason, he doesn't have all of his medical records. And this Court, I believe it was Gatlin v. Tilton, where this Court remanded to the District Court and requested the District Court to get the entirety of the Petitioner's medical records from the Respondent. And in that case, the District Court ultimately found that he was entitled to five years of equitable tolling. And that was a very similar case to this one. Whose burden is it to prove the timeliness? Well, ultimately, in terms of ultimately, it would be the Petitioner's burden to prove that he was entitled to equitable tolling. But at this point, based on this record, it's not adequate to make that kind of determination. I mean, the District Court dismissed as untimely with no State court filings and didn't look into his equitable tolling claims, despite his filing all of these papers saying that he has IQ 56, he's got post-traumatic stress disorder. He had this litany of medications that he was taking, and he declared that they affected his consciousness, they made him drowsy. And these are supported by the medical records that were filed in the District Court. And even so, the District Court dismissed without requiring any sort of response and did not develop the record properly in order to make a determination on equitable tolling, and a statutory tolling as well. I will reserve the rest of my time. Thank you. Good morning, Your Honors. May it please the Court. Deputy Attorney General Sarah Farhat on behalf of Respondent. In this case, Your Honors, it took Petitioner nine years from the date his conviction became final in order to file his federal habeas petition. It took him three and a half years from finality to file his first State court petition. The District Court, after providing Petitioner an opportunity to respond to the initial findings of untimeliness in his first federal petition, dismissed the petition as time-barred, finding ultimately that Petitioner had not carried his burden, and rightfully, his burden of establishing that he is entitled to sufficient tolling or that sufficient tolling exists in order to render the petition timely. This wasn't a simple rule for dismissal where Petitioner wasn't provided an opportunity to respond. In this case, the District Court issued an order to show cause why the petition should not be dismissed as untimely, and he filed a response and attached several additional medical records to that response. So despite opposing counsel's characterization of the District Court's dismissal of the petition in this case, Petitioner was provided with an opportunity to respond, and he did, in fact, take that opportunity. The District Court correctly dismissed the petition as untimely. Petitioner argued both in the District Court and here on appeal that mental illnesses prevented him from filing a timely federal petition. However, even if we were to give Petitioner the benefit of the doubt of those first three-and-a-half years before he filed his first state habeas petition, the statute of limitations still expired multiple times over the following five years. During those years, Petitioner filed nine state habeas or state petitions challenging his convictions in this case. That's nine distinct opportunities in which Petitioner could have filed a federal petition, nine distinct periods when he was aware of his need to file, when he could have and did, in fact, obtained assistance to file those state petitions. Kagan. But to repeat what I was asking before, I just reread what the District Court said about the first three years, and it makes not a whole lot of sense, because he basically is saying that it doesn't count because there was nothing pending, and he just doesn't seem to understand what Equipotola is about, and he also says that the record shows that his medical his mental system was getting better, and that doesn't seem to be accurate past a certain point. So assuming that that's no good, that's all he decided. And he hasn't decided anything else, so why should we be deciding? Because the record that was before the District Court is sufficient for this Court in order it's sufficient for this Court to make a timeliness determination. Even aside from the records that respond to this record. Do you know if there are any factual issues involved in any of that? First of all, the District Court didn't have most of the record, right? Well, the petitioner did attach some state court records to his petition. Right, but the District Court could not have looked at that and seen that from 2003 to 2008, whatever, that there were pending things in state court a lot of the time. No. He did not have those physical petitions before him, but he did not need to have them. His findings within the first three years, I understand that we're assuming for the sake of this argument that doesn't count, but the reasons that this Court can affirm the District Court's decision don't have to be based on the same rationale. You don't have to adopt the District Court's reasoning in order to affirm it. I understand that, but to be dealing with material that was not even before the District Court seems like a strange thing to be doing. Well, granted, it's not the ideal situation for this Court to have to deal with, but again, the District Court's finding of untimeliness, perhaps the reasoning may have not been 100% on point, but it was correct nonetheless, especially in light of the additional petitions that were provided. Had those petitions been provided to the District Court and had Respondent been provided an opportunity to basically lay out the tolling situation as it's done before this Court, the District Court would have come to the same conclusions that Respondent has provided or that Respondent has forwarded in its brief and that this Court can very well adopt, even if the District Court didn't reach it. Is there not factual information with regard to the post-2003 period as to when he was mentally ill and in the gap periods, for example, that would have to be explored that hasn't been explored? Well, Petitioner did provide medical records for that period. The medical records that he did provide belie his claims that he was so mentally impaired that he could not assist in the preparation of the petition. Is that not a fact-finding that we ought not to be making? Well, I don't think it's necessary based on the record. Based on the medical records that he did provide, it's unnecessary. Is there more factual development that could have been done? I can't say without a doubt that, no, there isn't. Surely there very well may be, but my point is that there need not be, based on the records that were provided to the District Court. And those records demonstrate, the medical records that Petitioner provided, demonstrate that while he did suffer from various mental illnesses, infirmities, impairments, what have you, he was functional. He was aware. He was oriented. At one point, he provided records indicating that he was resisting transfer from the state prison that he was at several hours a day with assistance in preparation for an appeal of his conviction. Is there any indication that the District Judge looked at or studied the medical records and made any determination in that area? Well, from the District Court, from the report and recommendation, you mean the District Court or the Magistrate Judge? The District Court. The District Court's order just adopted the Magistrate Judge's findings. And did the magistrate indicate that he looked at the medical records? In his report and recommendation, he did mention that he did review, you know, the review of the medical records demonstrated that Petitioner was faring well on his medication and that the illness or whatever the condition he had did not seem to deteriorate over the period of time in which Petitioner was claiming equitable tolling. But didn't he look only at 98 and 99? I don't. I can't tell you. I mean, just. Well, didn't he report only about 98 and 99? I would agree with that. I'm not saying he didn't consider. He wasn't looking at the relevant time period because he didn't understand what he was supposed to be looking at. Well, but I can't speak for the Magistrate Judge as far as what he considered and what he didn't. What we have is what he wrote about in the report and recommendation. But my point is, is that even taking just what was before the district court or the Magistrate Judge in doing his report and recommendation, there was sufficient evidence there that Petitioner can't demonstrate any entitlement to equitable tolling, not only for the three-and-a-half years, putting aside what the Magistrate Judge, you know, wrote about those three-and-a-half years. He can't show that he had suffered from a mental illness so severe that he was prevented from filing his federal petition. The medical records that he lodged during that first three-and-a-half years show that he was stable. There's nothing in those records that indicate a deterioration in his condition or that he was having any kind of adverse medical reaction. And that is sufficient. Was there anything in the Magistrate's report and recommendation to substantiate what you just said, that there's nothing in those records to establish that he wasn't competent to meet the deadlines? The Magistrate Judge has, I believe, at his point was that there was nothing. That's what he said. Yeah. There's no question this man was in very bad mental shape some of the time. Some of the time, perhaps. I can't tell you what the... How do we evaluate whether that was a time when he was entitled to have a delay or not? How do we do that? If you look at the timeline that I set forth in Apelli's brief, you can look at the records that were provided to the district court and Magistrate Judge. I guess what I'm asking is, did anybody really look at those? Your Honor, I can only presume that they did. I mean, as a judge, I'm not going to... But why would you presume that he did when the Magistrate Judge said that he's not he said he's not, he looked at the period from 98 to 99. He said he's not entitled to equitable tolling between November 99 and July 2000 based on mental illness because there was no case pending. And then he says he can't get equitable tolling from then to February 2003 because the limitations period had already expired by that time. So we know he didn't look at it because he said it wasn't relevant to him. Let me clarify one thing, Your Honor. I was responding to Judge Panner, and within that three-year period, I didn't realize we were going beyond 2003. No, I was only going to 2003. So... To 2003. The Magistrate Judge said from 2000 to 2003, he can't get equitable tolling because the limitations period had already expired by that time. That's what he said. That is what he said. And I can't tell... Therefore, he didn't consider whether he was mentally ill during that period. And the next sentence is, in any event, he filed a slew of state petitions, so he accomplished these things. But he didn't say anything about the mental health situation during that time period because obviously it wasn't relevant to his theory. Well, I don't think it's fair to say that the judge didn't consider that. I think that he may have considered it, may have rejected it based on the more straightforward theory that the statute of limitations had already expired. I'm not going to argue, and I'm not going to agree that the Magistrate Judge didn't consider all of the records that were provided by Petitioner, but perhaps... So we shouldn't believe him when he says why he decided something. I'm sorry? He said why he decided it, and we should think that he really decided for a different reason. No, I'm not saying that at all. The Magistrate Judge did what he did in this case. We're stuck with what the Magistrate Judge did as far as the reasoning that he gave. But again, I go back to the fact that this court can affirm on any reasoning, notwithstanding what the Magistrate Judge's reasoning was, whether you agree with it or not. What we have provided, what Respondent has provided in this case, is argument and records that demonstrate that even notwithstanding that three-and-a-half years, even assuming that Petitioner gets those three-and-a-half years of equitable tolling, he's still going to lose because he unreasonably delayed between his state court filings. He pursued three rounds of state court filings, nine state court petitions, during which any of those times he could have timely filed or filed a federal petition if he wanted to. Unless there are further questions. Thank you. Thank you. I think it's clear from this court's precedent and also what the Supreme Court has said that an equitable tolling determination is a very fact-intensive determination. It's a case-by-case analysis, and it's clear that the record here is not adequate for that kind of determination. As the panel has indicated, the district court clearly believed that it wasn't necessary to look at any time period after 2003 because the statute of limitations had already expired. So the district court wasn't even considering equitable tolling or Mr. Dent's mental state. At this point, Mr. Dent doesn't have the ultimate burden. And with respect to the standards set forth in Bill v. Clark, he needs to show that his mental impairment is so severe that he's unable to rationally or factually personally understand the need to timely file or that his mental state rendered him personally unable to prepare a habeas petition and effectuate its filing. So that cannot be determined from this record. And we would request that the case is remanded to the district court and that the district court look at the entirety of his medical records. There are several years of medical records that are just completely missing. I believe it's at least two years from November 2000 to July 2003. There's gaps from July 2003 to August 2004, from 2006 to 2007, and then another year from 2007 to 2008. And the district court should also be directed to consider Mr. Dent's developmental disabilities, which he never addressed. Is Mr. Dent now capable of presenting these issues competently to the district court? Well, he claims in all of his state court filings, he attaches declarations stating that a writ writer has prepared these for him and he's not able to do it. I'm talking about if we remand this to the district court, how is he going to present this issue competently? I would request. I mean, he would need counsel for the evidence you're hearing, definitely. Thank you. The case just argued will be submitted. The next case is done. We're submitted.
judges: Panner, Reinhardt, Berzon